**UNITED STATES of America,**

v.

**Karl DICKERSON, and Martin D. Filkins, Defendants.**

**No. 99–CR–571.**

United States District Court, N.D. New York.

Sept. 19, 2000.

---

torney, of counsel, Albany, for Plaintiff United States of America.

Office of Frederick Rench, Frederick Rench, of counsel, Clifton Park, for Defendant Karl Dickerson.

Office of the Federal Public Defender, Gene V. Primomo, of counsel, Albany, for Defendant Martin Filkins.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

## I. INTRODUCTION

The defendants are charged in a four count indictment with Conspiracy to interfere with commerce by extortion and threats of violence, Interference with commerce by extortion and threats of violence, Attempt to interfere with commerce by extortion and threats of violence, and Transfer of funds in interstate commerce in aid of racketeering activity, all in violation of 18 U.S.C. §§ 1951 and 1952. The defendants have pled not guilty to all counts of the indictment.

Defendants Martin D. Filkins ("Filkins") and Karl Dickerson ("Dickerson") moved to suppress all statements made to law enforcement officials, contending that they were made in the absence of a knowing and voluntary waiver of their Fifth Amendment right against self-incrimination. In addition, Filkins requested reconsideration of a previous denial of his motion, pursuant to Fed.R.Crim.P. 15, to permit him to take the deposition of Timothy Droulette ("Droulette"), the civilian victim in this case. *See* Docket No. 75. A hearing was held on September 6, 2000 in Utica, New York. Decision was reserved.

## II. DISCUSSION

### A. Defendants' Statements

If a statement is made which stems from custodial interrogation without the presence of an attorney, the government bears a "heavy burden . . . to demon-

Hon. Daniel J. French, United States Attorney, Northern District of New York, Steven A. Tyrrell, Asst. United States At-

strate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda v. Arizona,* 384 U.S. 436, 475, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *see also Dickerson v. United States,* —— U.S. ——, 120 S.Ct. 2326, 147 L.Ed.2d 405 (2000)(reaffirming *Miranda* ). The United States Supreme Court later clarified that "[w]henever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our *Miranda* doctrine, the State need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly,* 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986); *Cf. United States v. Matlock,* 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)(stating that "the controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

■ To determine whether a defendant knowingly and voluntarily waived his *Miranda* rights, the totality of the circumstances surrounding the interrogation must be considered. *See Fare v. Michael C.,* 442 U.S. 707, 725, 99 S.Ct. 2560, 61 L.Ed.2d 197 (1979). This approach permits consideration of factors such as "age, experience, education, background, and intelligence," as well as "whether [the defendant] has the capacity to understand the [*Miranda* ] warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." *Id.*

■ The government concedes that the defendants were in custody when they were questioned. However, the government contends that both defendants knowingly and voluntarily waived their Fifth and Sixth Amendment rights. Based upon the evidence presented at the suppression hearing, as discussed below, the government has met its burden of establishing that the defendants waived their *Miranda* rights.

Before Dickerson was interviewed, FBI Special Agent Thomas Stewart read a pre-printed Advice of Rights form aloud to Dickerson. After that, Special Agent Stewart handed Dickerson the form to read. Dickerson stated that he understood and signed the Waiver of Rights portion of the form, which was witnessed by Special Agent Stewart and Investigator Henry Piotrowski of the New York State Police.

Prior to being arrested and handcuffed, FBI Agent Gregory Hautau read the Advice of Rights form aloud to Filkins. Filkins acknowledged that he understood. Filkins then read the Advice of Rights form aloud and initialed each paragraph on the form. He then read the Waiver of Rights portion and signed that. This was witnessed by Agent Hautau and FBI Special Agent Daniel Matthews.

Both defendants were over the age of eighteen at the time of their arrests and both men spoke English. There was no evidence presented that either of them did not comprehend their rights or that they suffered from any mental disability. Therefore, the defendants' motion to suppress statements made to law enforcement officers must be denied.

### B. *Deposition of Timothy Droulette*

■ The Federal Rules of Criminal Procedure provide that

Whenever due to exceptional circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use at trial, the court may upon motion of such party and notice to the parties order that testimony of such witness be taken . . . .

Fed.R.Crim.P. 15(a). "It is well-settled that the 'exceptional circumstances' required to justify the deposition of a prospective witness are present if that witness' testimony is material to the case and if the witness is unavailable to appear at trial." *United States v. Johnpoll,* 739 F.2d 702, 708 (2d Cir.1984) (citations omitted).

The decision to grant or deny a motion to take a deposition rests within the trial court's discretion. *Id.* at 707.

Filkins seeks reconsideration of an order denying his motion to take the deposition of Timothy Droulette. Filkins claims that, although Droulette will be available for trial, the Government interfered with his attempt to interview Droulette. This interference, Filkins contends, justifies his request to take Droulette's deposition.

Filkins' Memorandum of Law accurately sets forth the evidence which was presented at the hearing concerning the factual circumstances surrounding the attempt by Wanda Rivera, an investigator for the Office of the Federal Public Defender for the Northern District of New York and Vermont, to conduct a pretrial interview of Droulette. (*See* Filkins Mem. of Law at 1–2.) However, even though the events occurred as alleged by Filkins, any interference or misunderstanding was rectified when Assistant United States Attorney Steven Tyrrell called and advised Droulette that it was solely his decision whether or not he wanted to speak to Ms. Rivera. Mr. Tyrrell also advised Filkins' attorney of the same. This was confirmed in a December 20, 1999 letter sent by Rivera to Droulette. (Def.'s Ex. 5.) This letter was returned unclaimed, however, the defendant failed to take any further steps to locate Droulette. The government is not required to actually produce Droulette to be interviewed. The government satisfactorily informed Droulette that it was his decision whether he wished to speak to Ms. Rivera. Beyond that, it was up to the defendant to locate Droulette and request an interview. Accordingly, Filkins has failed to present any evidence to warrant reconsideration of the previous order denying his motion to take Droulette's deposition.

## III. *CONCLUSION*

In accordance with the foregoing, it is

ORDERED, that

1. The defendants' motion to suppress statements made to law enforcement officers is DENIED;

2. Defendant Martin Filkins' request to reconsider the prior order denying his motion to compel the deposition of Timothy Droulette is DENIED; and it is further

ORDERED that

3. The trial for this matter will commence on October 10, 2000 at 9:30 a.m. in Utica, New York; and

4. The following pretrial submissions must be filed with the Clerk's office in Utica, New York by Monday, October 2, 2000:

a) Proposed voir dire questions,

b) Requests to charge,

c) Memoranda of law,

d) Witness list, and

e) Exhibit list.

IT IS SO ORDERED.